**Willard STITZELL, D.O., Plaintiff**

v.

**YORK MEMORIAL OSTEOPATHIC HOSPITAL, Martin Lasky, D.O., Michael L. Mitrick, D.O., Dean Natchigall, D.O., Defendants.**

**Civ. A. No. 89–0147.**

United States District Court, M.D. Pennsylvania.

June 25, 1991.

**130**

Gerald J. Williams, Mark R. Cuker, Williams & Cuker, Philadelphia, Pa., for plaintiff.

Christopher W. Mattson, Katherine B. Kravitz, Barley, Snyder, Senft & Cohen, Lancaster, Pa., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

We are currently considering the motion of the plaintiff, Willard Stitzell, D.O., to alter or amend our judgment order, dated January 25, 1991, which granted the motion of the defendants, York Memorial Osteopathic Hospital (Memorial), Martin Lasky, D.O., Michael L. Mitrick, D.O. and Dean Nachtigall, D.O., for summary judgment on counts I, II and V of the plaintiff's complaint and which denied the plaintiff's motion for partial summary judgment on count I. Other counts and other defendants had previously been dismissed so the order was final.

The memorandum in support of that order is published at 754 F.Supp. 1061 (M.D.Pa.1991). We will therefore not go into great factual detail in disposing of the current motion. We do note here that plaintiff formerly had privileges at Memorial as a neurosurgeon and sued the Hospital and others associated with it because he believed that they wrongfully brought about the termination of his professional relationship with Memorial. Count I of the complaint was for breach of contract based upon an alleged right in the Hospital Bylaws to a hearing after the Board refused to lift the monitoring condition in the monitoring agreement executed by plaintiff and Memorial. Count II was for breach of the monitoring agreement itself based upon the Board's refusal to lift the monitoring condition. Finally, count V was against the individual defendants for tortious interference with the plaintiff's contractual right to staff privileges at Memorial.

Dr. Stitzell first contends that we erred in concluding that the Bylaws did not give him the right to a hearing after Memorial refused to lift the monitoring requirement. He argues that the monitoring agreement is silent on this point and cannot be construed, as it was, to supersede his procedural rights under the Bylaws, which supposedly do give him the right to a hearing pursuant to a provision dealing with a denial of a physician's request for an increase in clinical privileges.

■ After consideration of the arguments raised in support of plaintiff's position, we believe our original conclusion remains the correct one. This was no ordinary application for an increase in clinical privileges. As we noted in our first memorandum, it was made in connection with an agreement which ended the plaintiff's appeal, following a full due process hearing, of the Ad Hoc Hearing Committee's decision to recommend a monitoring requirement. The agreement ended these proceedings, which had begun with plaintiff's summary suspension. Hence, the monitoring agreement controlled plaintiff's rights and since it provided no right to a hearing, the plaintiff's demand for one was unenforceable.

■ This conclusion is buttressed by an argument which the defendants made on the original motions and which they have renewed here. They correctly argue that the Bylaws provision entitling a doctor to a hearing when a requested increase in clinical privileges is denied is inapplicable to the plaintiff because he was not requesting an increase in privileges in seeking to lift the monitoring requirement. Those privileges

had already been restored to him as part of the agreement ending his appeal to the Board. What he was seeking was simply the lifting of a condition imposed upon the exercise of those privileges—a condition he agreed to in connection with issues raised about his competency. The plaintiff had therefore not been denied a hearing on a request for an increase in his clinical privileges because he was not seeking such an increase within the meaning of the Bylaws.

Plaintiff has argued that it was inconsistent for us to ignore the Bylaws in concluding that he had no right to a hearing but to rely upon the exculpatory clause in the Bylaws, and in his application for privileges, in concluding that count II must fail. We had reasoned that, although the decision to continue the monitoring agreement may have been a breach of contract in other circumstances, the exculpatory clause protected good faith actions of the Hospital and other persons in connection with the plaintiff's suspension and that count II failed because the plaintiff had presented no evidence of bad faith.

Plaintiff argues that, if the Bylaw hearing provision is superseded by the monitoring agreement, then the exculpatory clause should have been as well. Hence, it should have provided no protection for the defendants' conduct and plaintiff should be able to contest Memorial's decision to continue the monitoring regardless of the good faith or bad faith of the defendants.

■ Plaintiff ignores the broad scope of the exculpatory clause which immunizes any good faith acts relating to " 'proceedings for suspension or reduction of clinical privileges ... or matters or inquiries concerning professional ... qualifications.' " 754 F.Supp. at 1065. These would include the monitoring agreement and actions taken in accordance with it. On the other hand, the right to a hearing would not necessarily apply to an agreement, which itself followed a full due process hearing arising from a summary suspension, by which the parties were attempting to satisfy themselves about Dr. Stitzell's competence and to resolve an administrative appeal. As we noted above and in our first

memorandum, the Bylaws hearing provision did not in fact apply to the monitoring agreement.

■ Moreover, as we have concluded in this memorandum, even if it was applicable to the monitoring agreement, the hearing provision, in any event, gave Dr. Stitzell no right to a hearing. The refusal to lift the monitoring agreement was not a denial of an increase in clinical privileges which would have entitled plaintiff to a hearing under the language of the Bylaws.

■ Plaintiff argues that his rights under the monitoring agreement would be largely illusory if Memorial could rely upon the exculpatory clause in connection with it. We reject this argument. Exculpatory clauses are valid in Pennsylvania and we have already concluded that the one at issue in this case, which the plaintiff agreed to at the beginning of his relationship with the Hospital, is enforceable. We cannot ignore this clause simply because the plaintiff would be in a better position if we did. Additionally, plaintiff could still enforce his rights by showing a lack of good faith.

In that regard, the plaintiff argues that the issue of bad faith had not been raised or briefed on the original motion so that we erred in relying upon his failure to show bad faith in granting judgment for the defendants on count II. In his initial supporting brief on his motion to amend, plaintiff argued that bad faith could be shown by Dr. Lasky's "mischaracteriz[ation]," (supporting brief at p. 7) (brackets added), to the Board of an incident of unexplained blood loss during a Stitzell operation in the latter part of the monitoring program. Dr. Lasky had reported to the Board while they were deciding on continuing the monitoring agreement that Dr. Stitzell had needed the help of his monitor to stem the blood loss. Dr. Stitzell was actually able to do it himself. Plaintiff also said that the Board's decision "[to] terminate[ ] Dr. Stitzell's career," (supporting brief at p. 7–8) (brackets added), without personal contact from him, his monitor, or the Chair of his department,

called into question their good faith.[1] Plaintiff also asserted that others associated with Memorial may have acted in bad faith.

We were therefore expecting plaintiff's supplemental brief on the motion to alter or amend to detail the plaintiff's position that bad faith could be shown by the record produced in discovery. Instead, the brief is entirely silent on the issue. And the specific instances mentioned in the initial brief are not probative of bad faith or at least are insufficient to create a material issue of fact. The Board may not have had personal contact with the plaintiff or others because it was not required to. Dr. Lasky's mischaracterization was beside the point that he was actually making—that Dr. Stitzell had unexplained blood loss in two operations and caution was advised.

We have examined the plaintiff's other arguments, including those relating to the claim for tortious interference with contract in count V, and conclude that they are without merit.

---

1. The Board did not terminate Dr. Stitzell's career. It only extended the monitoring agree-    ment.